In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3756

ANIL GOYAL,

*Plaintiff-Appellee,*

*v.*

GAS TECHNOLOGY INSTITUTE,

*Defendant.*

APPEAL OF:

BARRY A. GOMBERG

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 05 C 5069 — **Rebecca R. Pallmeyer**, *Judge.*

---

SUBMITTED APRIL 22, 2013 — DECIDED October 17, 2013

---

Before WOOD, *Chief Judge*, and TINDER and HAMILTON,
*Circuit Judges.*

PER CURIAM. On June 3, 2013, we issued an opinion
affirming the district court's order quashing an attorney fee
lien asserted by appellant Barry A. Gomberg, a former attorney

of plaintiff Anil Goyal. *Goyal v. Gas Technology Inst.*, 718 F.3d 713 (7th Cir. 2013). Because we found that attorney Gomberg's arguments on appeal were frivolous, we ordered him to show cause why we should not impose sanctions under Federal Rule of Appellate Procedure 38. We also saw a possible violation of Rule 1.5 of the Rules of Professional Conduct and ordered Gomberg to show cause why we should not forward a copy of the opinion to the Illinois Attorney Registration and Disciplinary Commission with a request that it determine whether his conduct warrants disciplinary action. *Id.* at 720–21. Gomberg has filed his response, appellee Anil Goyal has responded, and Gomberg filed a reply.

After considering these submissions, we conclude that Rule 38 sanctions are justified in the amount of $7500 payable by Gomberg to Goyal and that a referral to the Commission is warranted. Gomberg's assertion of an attorney lien was entirely unjustified, his legal arguments in support of his payment demands were frivolous, and his explanations to this court for his conduct do not excuse it.

To summarize the details set forth in our earlier opinion, Goyal hired attorney Gomberg in late 2003 to represent him in mediating a dispute with his employer, defendant Gas Technology Institute. Under the terms of their fee contract, Goyal paid Gomberg a non-refundable retainer of $2500, which would count toward a ten percent contingent fee for Gomberg "on all monies and items of value that we secure for you beyond what you have obtained from Gas Technology Institute to this date … ." The retainer agreement did not contemplate litigation. Mediation sessions began. Two weeks after the first mediation session, Gomberg sent a letter to GTI's attorneys

claiming an attorney lien in the amount of $70,000. Gomberg's response to the order to show cause provides no explanation or basis for his assertion of a lien in that amount at that time.

In March 2004, GTI made what it then called its final offer to settle with Goyal for $375,000. Goyal rejected the offer, and he and attorney Gomberg parted ways. On March 12, Gomberg sent Goyal a letter confirming the termination of the attorney-client relationship and asserting that Gomberg had filed an attorney's lien for his fee. In response, Goyal wrote that, since the mediation had not produced an agreement, the initial retainer of $2500 that he had already paid Gomberg was the only fee to which he was entitled.

More than a year after these events, Goyal filed suit against GTI. In April 2009, acting pro se, Goyal settled with GTI for approximately $1,300,000. Before all payments were made to Goyal under the settlement, Gomberg contacted GTI's lawyers, invoked his lien, and demanded payment of $34,022.52 in attorney fees from Goyal's settlement. (This amount included a demand for more than $4600 for Gomberg's efforts to collect on the lien. For details of the calculation, see 718 F.3d at 716 n.2.) Goyal tried to stop GTI from paying Gomberg and sought help from the Chicago Bar Association to resolve the fee dispute. Gomberg refused to cooperate, though, and in January 2010 GTI wired Gomberg the requested amount. Gomberg held the amount in his client funds escrow until shortly after we issued our opinion on June 3, 2013. He reports that he then paid Goyal promptly, with interest.

Federal Rule of Appellate Procedure 38 authorizes a United States Court of Appeals to award damages and single or

double costs to an appellee when an appeal is frivolous. The Rule has both a compensatory purpose and a deterrent purpose. *E.g.*, *Harris N.A. v. Hershey*, 711 F.3d 794, 801 (7th Cir. 2013); *Ruderer v. Fines*, 614 F.2d 1128, 1132 (7th Cir. 1980). Rule 38 should not be invoked lightly, for reasonable lawyers and parties often disagree about the application of the law to a particular case. This court's doors are open to consider such reasonable disagreements brought to us in good faith. An appeal can be frivolous, though, "when the result is obvious or when the appellant's argument is wholly without merit." *Spiegel v. Continental Illinois Nat'l Bank*, 790 F.2d 638, 650 (7th Cir. 1986), quoting *Indianapolis Colts v. Mayor and City Council of Baltimore*, 775 F.2d 177, 184 (7th Cir. 1985). When an appeal is frivolous, Rule 38 sanctions are not mandatory but are a matter for the sound discretion of this court. *Burlington Northern R.R. Co. v. Woods*, 480 U.S. 1, 4 (1987).

We issued our order to show cause based on two concerns about Gomberg's professional conduct. First, he took the frivolous position in the district court and on appeal that he had "secured" funds for Goyal when the opposing party made a settlement offer that Goyal then rejected. Second, Gomberg asserted a lien for $70,000 in December 2003 when there was no basis for any lien, and certainly not in that amount. We invited further factual development that might have justified or excused Gomberg's decision to appeal to this court despite the apparent frivolousness of his arguments.

Gomberg first argues in his response to our show cause order that his claim for a fee was justified, insisting that the term "secured" in the fee agreement arguably could encompass obtaining an offer of settlement even if the offer is not

accepted. We rejected this idea in our earlier opinion when we explained that, based on the most elementary principles of contract law and contingent fee agreements, Gomberg never "secured" any funds for Goyal. 718 F.3d at 718–19. Gomberg correctly points out that there is a critical difference between an unsuccessful legal argument and one that is frivolous. But without repeating our discussion from the merits opinion, his untenable position that he "secured" funds for Goyal when the opposing party made an unaccepted settlement offer falls squarely on the frivolous side of that line.

Nor has Gomberg justified his December 2003 assertion of a lien for $70,000, an assertion he made before any settlement offer had even been made. Though we ordered Gomberg to explain his action, his original response to us did not even mention the point. His reply to Goyal's response told us only that he realized in 2009 that an unidentified "mathematical calculation" had been incorrect. He has provided no basis on which we could even guess that he had a reasonable basis for claiming $70,000 or what mathematical mistake he might have made. His contract with Goyal was for ten percent of any additional funds his efforts secured for Goyal. When Gomberg told GTI he was asserting a right to a $70,000 lien, GTI had not offered any settlement remotely supporting the amount, and it never did so while Gomberg was representing Goyal. And even under Gomberg's specious reasoning, he could have claimed to have been entitled to only $29,383 based on GTI's offer of $375,000, which was not made until several months later. See 718 F.3d at 716 n.2 ([$318,825.28 ÷ 10] - $2500 retainer = $29,383).

Gomberg also asserts that he had a legitimate basis for seeking a *quantum meruit* fee because Goyal settled with GTI after Gomberg had expended time and energy on the case. As we explained in our earlier opinion, Gomberg waived this point. He did not make the argument to Magistrate Judge Keys, see Dkt. 258, and his argument to Judge Pallmeyer failed to come to grips with the relevant facts, see Dkt. 276 at 4–6. See generally 718 F.3d at 720 & n.3. In his objections submitted to Judge Pallmeyer, Gomberg pointed out that if GTI had offered $1 million to settle, Goyal had rejected it, fired Gomberg, and then settled for $1 million plus one cent, he would have a legitimate *quantum meruit* claim. We agree with him about that exaggerated example. As we explained in our earlier opinion, the *quantum meruit* theory provides a mechanism to protect lawyers who work on a contingent fee basis from such unfair treatment by their clients. 718 F.3d at 719–20.

The problem is that each time Gomberg has presented a conclusory variation of his *quantum meruit* theory, he has failed to address the relevant facts, including the contingent nature of his fee agreement, the very limited scope of his own actions, the vast difference between the offer he obtained and the terms of the ultimate settlement, and the many years of litigation between GTI's unaccepted offer in March 2004 and its accepted offer in April 2009. Since Gomberg has never marshaled a coherent argument under *quantum meruit*, the theory does not save his appeal from having been frivolous.

The basic theme of Gomberg's response is that he worked hard for Goyal and that he deserved to be paid. What is missing from the response is any recognition of the facts that Gomberg agreed to a contingent fee and that his efforts did not

"secure" any funds for Goyal. Attorneys who work on a contingent fee basis know that even though they may work long and hard, the fee may turn out to be zero. If Goyal had fired Gomberg and turned around and settled quickly with GTI for essentially the terms of the offer made through Gomberg, he would have a point, but that is not what happened. Gombeg's efforts to avoid the reality of the contingent fee agreement that he drafted and signed have been frivolous.

In a final attempt to avoid Rule 38 sanctions, Gomberg argues in his response that Goyal, because he acted pro se on appeal, may not be awarded attorney fees. He argues by analogy to cases concluding that a pro se litigant is not entitled to an attorney fee under 42 U.S.C. § 1988. See *Kay v. Ehrler*, 499 U.S. 432 (1991). The analogy is not persuasive. First, if it applied here, it would be inconsistent with Gomberg's own demand in the district court that Goyal pay him an additional $4640 in "fees" for his efforts to enforce his frivolous lien. See 718 F.3d at 716 n.2. More fundamental, though, section 1988 is phrased in terms of attorney fees, while Rule 38 is not so limited. To serve the deterrent and compensatory purposes of Rule 38, the fact that Goyal chose to defend himself rather than hire an attorney should not work to Gomberg's benefit.

As noted above, Rule 38 sanctions call for an exercise of discretion. We are most concerned here that this case shows an attorney's persistent, years-long effort to extract money from a client on frivolous theories. An attorney owes a fiduciary duty to all her clients—even the difficult ones. Gomberg's unsuccessful work on behalf of Goyal has never given him a viable claim for a fee, yet he has tied up Goyal and the courts for years with his frivolous efforts to extract a fee for this

unsuccessful work. Given this prolonged and oppressive misuse of the law's mechanisms to protect attorneys from unreasonable clients, Rule 38 sanctions are justified both to compensate Goyal and to deter Gomberg and other similarly situated attorneys.

The amount of those sanctions is also a matter of judgment and discretion. We again keep in mind both the compensatory and deterrent purposes of Rule 38. Goyal spent nearly 150 hours on the appeal alone. Anyone who has been a party to litigation can comprehend the stress that goes along with such work. We conclude that a Rule 38 sanction of $7500 payable by Gomberg to Goyal is an appropriate sanction here. That amount compensates Goyal approximately $50 per hour for his efforts on the appeal. By coincidence, it is also the approximate sum of the $2500 retainer that Goyal paid and the amount that Gomberg himself was claiming in the district court for his own frivolous efforts to enforce the lien. We believe this sum should be sufficient to both compensate and deter.

Finally, nothing in Gomberg's response persuades us that he did not violate Rule of Professional Conduct 1.5, which provides in relevant part that a lawyer shall not charge or collect an unreasonable fee. We read Rule 1.5 to prohibit a lawyer from asserting unreasonable and baseless demands for a fee contrary to the terms of his fee agreement. See Restatement (Third) of Law Governing Lawyers § 43, cmt. h (2000) (a "fee claim with respect to which a lien is asserted must be advanced in good faith and with a reasonable basis in law and fact"). We will send a copy of our earlier opinion and this opinion to the Illinois Attorney Registration and Disciplinary

Commission for such further consideration as it may deem appropriate.

SO ORDERED.