NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted September 17, 2019[*]
Decided September 20, 2019

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 19-1266

| | |
|---|---|
| MAURICE BUFORD, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 16 C 10218 |
| LABORERS' INTERNATIONAL UNION LOCAL 269 and LABORERS' INTERNATIONAL UNION LOCAL 4, *Defendants-Appellees*. | Gary Feinerman, *Judge*. |

**O R D E R**

Two weeks after Maurice Buford, a black construction worker, started working at I.W. & G., Inc., the company fired him. His union investigated his assertion that he was fired because of his race, but it decided not to file a grievance against the company.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

Buford then sued the union, alleging three legal theories: (1) the union violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(c)(3), by supporting a race-based firing; (2) it violated 42 U.S.C. § 1981 by participating in employment discrimination; and (3) the union breached its duty to represent him fairly, in violation of the Labor Management Relations Act, 29 U.S.C. § 185. The district court entered summary judgment for the union. Because Buford offered no evidence that could support his discrimination claims and because his claim under the Labor Management Relations Act is untimely, we affirm.

We first address Buford's contention that the district court improperly limited the record at summary judgment. In opposing summary judgment, Buford violated the district court's local rules by failing to cite record evidence to support his responses to the defendants' proposed findings of fact. *See* N.D. ILL. L.R. 56.1(b)(3). Even pro se litigants must comply with the court's rules, *see McNeil v. United States*, 508 U.S. 106, 113 (1993), so the district court reasonably rejected Buford's asserted disputes, *see Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 710–11 (7th Cir. 2015). Like the district court, we limit our factual summary to the undisputed material facts that are properly supported with admissible evidence, and we view those facts in the light most favorable to Buford. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218–19, 222 (7th Cir. 2015).

Buford worked for I.W. & G., a construction company, for two weeks in July 2014. He and several coworkers belonged to the Laborers' International Union Local 269, which had a contract with I.W. & G. The agreement guaranteed that "Employees will not be discriminated against because of race," but did not require just cause to fire a union member. I.W. & G. fired Buford after he reportedly displayed "[t]hreatening behavior" in clashes with coworkers. During one quarrel, a coworker and fellow union member called Buford a racial slur.

Buford complained to the union about his firing, and Timothy Moore, the union's business manager, investigated. I.W. & G. explained that it fired Buford because of his several "verbal" and "physical alteration[s]" during his two weeks at the company. Moore also interviewed Buford's supervisor and collected disciplinary reports and coworker statements. These statements and reports confirmed the difficulties of working with Buford. Moore decided that the union would not file a grievance against the company for firing Buford.

Buford then sued his union for discriminating against him and for breaching its duty to represent him fairly. He alleged that, based on his race, the union (through

Moore and union members at I.W. & G.) conspired with the company to falsify reports so that the company could fire him pretextually. Buford also twice asked the court to recruit counsel. The court denied Buford's first motion (filed with his complaint) because Buford had not "sought representation from a sufficient number of attorneys." It denied the second (filed before the union had answered Buford's complaint) without prejudice because the court could not yet determine whether the case was so complex that Buford required counsel. Buford did not later renew his request.

After a magistrate judge presided over discovery, the district court entered summary judgment for the defendants. On the discrimination claims, it ruled that Buford had not furnished evidence that the union had showed racial animus or had treated similarly situated workers better. The claim under the Labor Management Relations Act, which has a six-month statute of limitations, was untimely because Buford filed his suit nearly two years after the union declined to challenge his firing. The court also denied Buford's motion under Federal Rule of Civil Procedure 60, in which he argued without elaboration that the defendants' counsel misadvised Buford about how to respond to their summary-judgment motion.

On appeal, Buford argues that the district court improperly entered summary judgment, but the court made no error. For both his Title VII and § 1981 claims, Buford must supply evidence of discriminatory intent or disparate treatment based on race. *See Alexander v. Wis. Dep't of Health and Family Servs.*, 263 F.3d 673, 682 (7th Cir. 2001). But Buford cited no evidence that the union fabricated reports or treated non-black members who were accused of threatening coworkers better than it treated him. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–06 (1973); *McKinney v. Office of Sheriff of Whitley Cty.*, 866 F.3d 803, 807 (7th Cir. 2017). Instead, he argues that his discharge was discriminatory because the racial slur from his union-member coworker shows that the union's decision to acquiesce in his firing was racially motivated. But no evidence suggests that company supervisors or union leaders knew about, let alone condoned, the slur. So, a factfinder could not reasonably attribute the slur to either the company or the union. *E.E.O.C. v. Pipefitters Ass'n Local Union 597*, 334 F.3d 656, 661 (7th Cir. 2003) (unions have no "affirmative duty to prevent racial harassment … in the workplace"); *Durkin v. City of Chicago*, 341 F.3d 606, 612 (7th Cir. 2003) (employer "must have notice or knowledge of the harassment before it can be held liable"). Finally, Buford's duty-to-represent claim under the Labor Management Relations Act was untimely; he sued in October 2016, more than two years after he was fired—well outside the Act's six-month statute of limitations. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 171–72 (1983).

Next, Buford argues that the district court unreasonably denied his two motions to recruit counsel. But his first motion showed that he had contacted only one attorney, which the court permissibly considered inadequate. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc). And the court properly denied the second motion without prejudice because the union had not yet answered the complaint: only in an "unusual" case, which this lawsuit is not, need a court recruit counsel so early. *Mapes v. Indiana*, 932 F.3d 968, 971–72 (7th Cir. 2019). Buford could have renewed his motion later, when the contested issues became apparent, but he did not.

Buford also generally argues that the magistrate judge who oversaw discovery was biased because he decided discovery disputes in favor of the defendants and thwarted Buford's attempts to compel discovery. But adverse decisions are not, by themselves, evidence of bias. *See Liteky v. United States*, 510 U.S. 540, 555–56 (1994). And in any event, the judge committed no abuse of discretion and adequately justified the rationale for his rulings. *See Jones v. City of Elkhart*, 737 F.3d 1107, 1115–16 (7th Cir. 2013). One example will suffice: in denying Buford's motion to compel the defendants to seek responses to Buford's interrogatories for non-defendant witnesses, the judge explained to Buford the proper process for serving his requests.

Finally, Buford unpersuasively challenges the district court's denial of his motion under Federal Rule of Civil Procedure 60(b). Buford's assertions about his conversation with the defendants' counsel are vague. Therefore, we cannot conclude from his assertions that those conversations improperly prevented him from overcoming summary judgment. *See Venson v. Altamirano*, 749 F.3d 641, 651 (7th Cir. 2014).

AFFIRMED